UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SODA MOUNTAIN WILDERNESS
COUNCIL and KLAMATH FOREST
ALLIANCE,

        NO. CIV. S-04-2583 LKK/CMK

    Plaintiffs,

  v.                                     O R D E R

GAIL NORTON, et al.,

    Defendants.

_____/

    Pending before the court is plaintiffs' motion for an award of attorneys' fees and costs pursuant to 28 U.S.C. § 2412(a)-(d). The court decides the matter based on the papers and pleadings filed herein.

**I.**

**BACKGROUND FACTS**

    Plaintiffs, Soda Mountain Wilderness Council ("SMWC") and the Klamath Forest Alliance ("KFA"), brought suit against the Bureau of Land Management ("BLM") and its relevant officials

1

1  ("defendants") and parent agency, alleging violations of the
2  National Environmental Policy Act ("NEPA"), the Administrative
3  Procedure Act ("APA"), and the Federal Land Policy and Management
4  Act ("FLPMA").  The suit originated out of a proposed amendment to
5  the land management plan for the Redding Resource Area concerning
6  acquisitions of land for the Horshoe Ranch Wildlife Area ("HRWA").
7  On March 23, 2006, the court issued an order granting plaintiffs'
8  motion for summary judgment and denying defendants' motion for
9  summary judgment on the question of compliance with FLPMA and
10 NEPA.[1]

**II.**

**STANDARD**

The Equal Access to Justice Act (EAJA) provides that a court shall award reasonable attorney's fees and expenses to a prevailing party in any civil action, unless the government demonstrates that its position was substantially justified, "or that special circumstances made an award unjust."  28 U.S.C. § 2412(d)(1)(A).

The EAJA places a ceiling on attorney's fees of $125.00 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  See 28 U.S.C. § 2412(d)(2)(A).[2]  The "cost of living"

---

[1] The court incorporates by reference all the relevant facts from the March 23, 2006 order granting plaintiffs' motion for summary judgment.

[2] "[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study,

2

adjusted EAJA rate is calculated by enhancing the EAJA's rate of $125 per hour by the consumer price index (CPI-U) for urban consumers that is current in the year when the fee is earned. Sorenson v. Mink, 239 F.3d 1140, 1148 (9th Cir. 2001).

The EAJA's "special factor" exception applies only in limited circumstances where "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." Id.; Pierce v. Underwood, 487 U.S. 552, 572 (1988). Additionally, the attorney seeking EAJA fees must show that the distinctive knowledge and skill are "in some way needed in the litigation and cannot be obtained everywhere at the statutory rate." See Ramon-Sepulveda v. Immigration and Naturalization Serv., 863 F.2d 1458, 1463 (9th Cir. 1988).

### III.

### ANALYSIS

**A.   PREVAILING PARTY STATUS**

In the case at bar, plaintiffs were clearly the prevailing party. Under the EAJA, a "prevailing party" is "one who has gained by judgment or consent decree a material alteration of the legal relationship of the parties." Perez-Arellano v. Smith, 279 F.3d 791, 794 (9th Cir. 2002)(citing Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't. of Health & Human Res., 532 U.S. 598 (2001)).

---

analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A).

3

A material "alteration" occurs when the party is successful "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>see also</u> <u>Nat'l Audubon Soc'y v. United States Forest Serv.</u>, 46 F.3d 1437, 1448 n. 10 (9th Cir. 1994). A plaintiff need not succeed on every claim to be entitled to fees and "is a prevailing party by succeeding on any significant issue which achieves some of the benefit sought." <u>Mantolete v. Bolger</u>, 791 F. 2d 784, 786 (9th Cir. 1986). Because challenges in environmental cases are usually limited to reviewing governmental agencies' decisions, "plaintiffs 'prevail' in environmental litigation when they obtain a court judgment that identifies a substantial flaw with an agency's interpretation of law or weighing of facts." <u>Golden Gate Audubon Soc'y v. United States Army Corps of Engineers</u>, 738 F.Supp. 339, 343 (N.D. Cal. 1988).

In the case at bar, defendants concede that plaintiffs were the prevailing party. <u>See</u> Defs.' Opp'n at 3:27. Indeed, the court granted summary judgment for the plaintiffs on all but one substantive issue.[3] The court found that, "the defendants have failed to conduct adequate environmental review as required by FLPMA and NEPA" and ordered defendants to "return to the drawing board and prepare either an adequate EA [Environmental Assessment]

---

[3] Plaintiffs' fourth claim for relief, alleging a failure to include all interested parties in the initial scoping process for the RRMP amendment, was dismissed after they failed to raise the issue in their motion for summary judgment and failed to respond to it in their reply and opposition. Order at 54.

4

or a complete EIS [Environmental Impact Study] which contains a clear statement of purpose and need, which fully analyzes the direct, indirect and cumulative impacts of the amendment, and which examines a complete set of reasonable alternatives . . . tailored to meet the goals set out in the purpose and need statement." Soda Mountain Wilderness Council v. Norton, CIV. S-04-2583, slip op. at 54 (E.D. Cal. Mar. 23, 2006)(Karlton, J.)("Order").  This result more than suffices to establish plaintiffs as the prevailing party. The court next determines if the government's position was substantially justified.

**B.   SUBSTANTIAL JUSTIFICATION OF THE UNDERLYING ACTION AND LITIGATION POSITION**

The standard for determining whether the government's underlying conduct was substantially justified is one of "reasonableness."  See Foster v. Tortelotte, 704 F.2d 1109, 1112 (9th Cir. 1983).  The government's position is "substantially justified" if it "has a reasonable basis in law and fact."  See Ramon-Sepulveda, 863 F.2d at 1459. (citing Pierce, 487 U.S. at 565).  The burden of proving the substantial justification exception under the EAJA rests with the government.  See Love v. Reilly, 924 F.2d 1492, 1495 (9th Cir. 1991).

Defendants maintain that their case as whole was substantially justified.  First, defendants argue the court's comments during oral argument "plainly indicate that the Government's position was 'justified to a degree that could satisfy a reasonable person.'"
////

5

Defs.' Opp'n at 4.[4]  Second, defendants argue that their position was substantially justified because they "reasonably argued that plaintiffs' injury-in-fact was insufficient to support standing." Id. at 5.  Lastly, defendants argue that their position was justified because they adequately complied with NEPA.  Id. at 5.  The court cannot agree.

First, the comments made by the court during oral argument do not support defendants' contention that "the Government's position was 'justified to a degree that could satisfy a reasonable person.'"  Defs.' Opp'n at 4.  The comments identified by defendants pertain only to the court's original concerns that plaintiffs may have lacked standing to bring suit.[5]  Indeed, the court sought supplemental briefing on the issue of standing.  See Dec. 6, 2005 Order.  Once the court was properly briefed on the standing issue, the court concluded that "[p]laintiffs have demonstrated a host of different concerns which may be impacted by the proposed amendment," and "the court is therefore satisfied that plaintiffs have demonstrated that they may suffer an injury-in-fact that is within the 'zone of interests' that NEPA and FLMPA were designed to protect."  Order at 27.  As the order clearly sets forth, once supplemental briefing was provided on standing, the

---

[4] Defendants excerpted several comments that the court made during oral argument that related to standing.  For example, defendants point to a moment when the court exclaimed that the standing issue was "not clear," Reporter's Transcript ("RT") at 4, and that "it is a very subtle and difficult problem." RT at 18.

[5] Indeed, the court raised the standing question on its own as it was not advanced by the defendants.  Order at 26.

6

1  issue became less subtle and less difficult to resolve.  In short,
2  the court's comments about standing during oral argument do not
3  support defendants' contention that their position as a whole was
4  substantially justified.
5       Second, the court cannot agree that defendants' position was
6  substantially justified because they "reasonably argued that
7  Plaintiff's injury-in-fact was insufficient to support standing."
8  Id. at 5.  As discussed above, the court explicitly stated that it
9  was "satisfied that plaintiffs have demonstrated that they may
10 suffer an injury-in-fact that is within the 'zone of interests'
11 that NEPA and FLMPA were designed to protect." Order at 27.
12 Therefore, the court concludes that this argument also fails to
13 prove a substantial justification for defendants' position as a
14 whole.
15      Lastly, defendants argue that their position was justified
16 because they adequately complied with NEPA.  Id. at 5.  Defendants
17 maintain that they adequately "prepared an EA and, upon a
18 determination that the proposed action would not significantly
19 affect the environment, made a 'finding of no significant impact.'"
20 Defs.' Opp'n at 5.  This argument is unavailing.
21      The March 23, 2006 order is replete with examples of
22 defendants failing to complying with NEPA. Specifically, the court
23 found defendants failed to comply with the NEPA requirement that
24 the EA "include brief discussions of the need for the proposal, of
25 alternatives as required by § 102(2)(3), of the environmental
26 impacts of the proposed action and alternatives, and a listing of

7

agencies and persons consulted." Order at 33 (quoting 40 C.F.R. Pt. 1508.9). The court observed that this failure to clearly define the scope and purpose of its actions "raise[d] serious questions as to the adequacy of the agency's action," also noting that defendants' reticence made any analysis of the propriety of their actions almost impossible. Order at 35.

The court also found that the impact analysis in the EA was inadequate. The court explained that the "cumulative impacts analysis in the EA under consideration is a page long. It does not mention, nor discuss, any past, present or future projects being conducted in the area that might result in a cumulative impact." Order at 44. This failure to provide adequate information is also a substantial violation of NEPA. See, e.g., Thomas v. Peterson, 841 F.2d 332, 335-36 (9th Cir. 1988)(indicating that a failure to provide a cumulative impact analysis was a substantial violation of NEPA).

The court also held that defendants failed to properly consider alternatives to their plans as required by law. See Order at 40. The court explained defendants' obligation under 40 C.F.R. Pt. 1502.14(a) was to identify and briefly explain, which, if any, alternatives were considered for analysis but then rejected. The defendants completely failed to meet these obligations. Order at 41.

Lastly, the court found that overall, defendants' actions "fail[] to draw rational connections between the facts found and the decision made." Order at 53. The court concluded that

1  defendants "failed to conduct adequate environmental review as required by FLPMA and NEPA."  Order at 54.

Accordingly, the court finds that defendants failed to provide a substantial justification in law or fact for their underlying actions, as required under the EAJA.

## C. ATTORNEYS' FEES AND COSTS

Because plaintiffs are the prevailing party, defendants' position was not substantially justified, and an award of fees would not be unjust, the court must award "fees and other expenses."  See 28 U.S.C. § 2412(d)(1)(A).[6]  The phrase "fees and other expenses" is defined in the statute as constituting "reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees."  28 U.S.C. § 2412(d)(2)(A).

Plaintiffs seek $177,624.25 in attorneys' fees and $2,503.00 in expenses, for a total of $180,127.25.  Pls.' Mot. For Att'ys Fees at 18.  Plaintiffs were jointly represented in this action by two attorneys, Mr. William H. Sherlock of Eugene, Oregon (lead counsel) and Ms. Sharon E. Duggan of Oakland, California.

////

---

[6] Plaintiffs qualify as a "party" entitled to an award under the EAJA because they are tax-exempt organizations, have a net worth of "substantially less than $7,000,000 in assets" and less than 500 employees.  Id. at 6; Dec. of Kimberly Baker at 2; Dec. of David Willis at 2.

1 Plaintiffs request attorneys fees of $400 per hour for Sherlock,
2 $425 per hour for Duggan, and $70 per hour before graduation and
3 $100 per hour after graduation for Pamela Hardy, a certified law
4 student.[7]

### 1. Hourly Rate for Attorneys Fees

The EAJA as amended in 1996 sets a base rate of $125 per hour. 28 U.S.C. § 2412(d)(2)(A).  Section 2412(d)(2) provides that "attorney fees shall not be awarded in excess of $ 125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2); United States v. 22249 Dolorosa St., 190 F.3d 977, 985 (9th Cir. 1999).  Plaintiffs request both a cost-of-living increase and a "special factors" increase based on the "limited availability of qualified attorneys for the proceedings involved."  Pls.' Mot. For Att'ys Fees at 13.

////
////

---

[7] Note that defendants do not oppose awarding fees to the law student.  Moreover, there is ample case law supporting the proposition that attorneys' fees include work done by law students and paralegals.  Indeed, the Supreme Court, and lower courts, have approved the inclusion of fees for law clerks and law students in fee awards under EAJA and analogous fee-shifting statutes, on the theory that their work contributed to their supervising attorney's work product, and could be done effectively by non-attorneys for a lower rate, thereby lowering overall litigation costs.  See Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989); Cook v. Brown, 68 F.3d 447 (Fed. Cir. 1995); Miller v. Alamo, 983 F.2d 856, 862 (8th Cir. 1993); In re Application of Mgndichian, 312 F.Supp.2d 1250, 1266 (C.D. Cal. 2003).

10

### a. Cost of Living Increase

Plaintiffs request a cost of living increase in their hourly wages in the amount of $153.38 for 2004, $157.53 for 2005, and $164.08 for 2006.[8]  The court agrees that an increased award for inflation is proper.

### b. "Special Factors" Increase

Plaintiffs assert that they satisfy the requirements allowing recovery above the statutory limit, adjusted for inflation.  The Ninth Circuit has consistently recognized that environmental litigation is a specialty area justifying an upward adjustment.  Love v. Reilly, 924 F.2d at 1496.  The Circuit has also set out a three-part test to determine whether there is a limited availability of qualified attorneys which justifies an enhanced rate: "First, the attorney [claiming the enhanced rate] must possess distinctive knowledge and skills developed through a practice specialty.  Secondly, those distinctive skills must be needed in the litigation.  Lastly, those skills must not be available elsewhere at the statutory rate."  Love, 924 F.2d at 1495.

////

---

[8]  These rates are calculated by "multiplying the basic EAJA rate by the consumer price index for urban customers (CPI-U), and then dividing the product by the CPI-U in the month the cap was imposed."  Soreson, 239 F.3d at 1148.  The "lodestar" for each year in which plaintiffs' attorneys worked is calculated by dividing the "West Urban" CPI-U for 2004 (191.9), 2005 (197.1) and 2006 (205.3 by April, 2006) by 156.4 – the CPI-U for March, 1996, when the cap was imposed – and multiplying each result by $125 to get the adjusted rate. Id.

11

Defendants argue that if any award is made, the statutory EAJA cap should be applied. Defs.' Opp'n at 8. Specifically, they argue that plaintiffs "provided no convincing evidence that specialized skills in the environmental litigation were unavailable elsewhere in Sacramento for the statutory rate." Defs.' Opp'n at 9. The court cannot agree.

Plaintiffs have established that they satisfy the requirements set forth in Love v. Reilly. Both attorneys have distinctive knowledge and skills in the area of environmental law. Mr. Sherlock has worked in environmental law for sixteen years. Dec. of William H. Sherlock at 2. He worked as lead or co-counsel in ten separate federal environmental cases, and specializes in state and federal environmental law, land use, and real property issues. Id.

Ms. Duggan has similar distinctive knowledge and skills regarding environmental law. She has practiced environmental law for more than 20 years, has written law review articles on environmental law and taught environmental law courses at the University of San Francisco. Dec. of Sharon E. Duggan at 4-5.[9]

Plaintiffs also request $70 per hour before graduation and $100 per hour after graduation for Pamela Hardy, a certified third

---

[9] Both Duggan and Sherlock provide the declaration of Michael D. Axline, an attorney with 24 years of litigation experience in primarily federal environmental law, to support their contentions. Dec. of Michael D. Axline. Axline contends that the hourly rates requested by Sherlock and Duggan are reasonable, "commensurate with their skill and experience, and commensurate with the rates charged by other attorneys and law firms with similar skill and experience." Id.

1  year law student.  Pls.' Mot. For Att'ys Fees at 16.  Hardy
2  declares that she specializes in environmental law. Dec. of Pamela
3  Hardy at 2.  Specifically, she declares she earned a certificate
4  of completion in the Environmental and Natural Resources law
5  program at the University of Oregon School of Law and chose to
6  research the "debate about the boundaries of the Horseshoe Ranch
7  Wildlife Area." Id.

8  Plaintiffs' attorneys assert they satisfy the second criterion
9  for enhanced fees because their "distinctive skills" were needed
10 in this case.  Specifically, they cite to Axline's declaration,
11 which states that after reviewing the case file, including the
12 parties' legal memorandum as well as the court's orders,
13 plaintiffs' case "clearly required the participation of lawyers who
14 have a specialized understanding and skill in the field of
15 environmental law, given the intricacies of the relevant
16 precedents." Dec. of Michael Axline at 2-3; see also Dec. of
17 William Sherlock at 3.  The court agrees that plaintiffs'
18 attorneys' special skills and distinctive knowledge were required
19 in this litigation.

20 Plaintiffs also maintain they satisfy the third criterion for
21 enhanced fees because their attorneys' skills were unavailable at
22 the base rate under EAJA of $125 per hour. See Dec. of David
23 Willis at 2; see also Dec. of Kimberly Baker at 3.  Plaintiffs
24 provide the declarations of David Willis and Kimberly Baker, both
25 of which state that "there was no other attorney available with the
26 level of specialized skill and experience in environmental law and

13

with the specific knowledge and history of the Cascade-Siskiyou National Monument and Horseshoe Ranch Wildlife Area who [they] believed was necessary to win this case for any less than this full fee award based on prevailing rates." Dec. of David Willis at 2-3; Dec. of Kimberly Baker at 3. The court finds that plaintiffs provided sufficient evidence to establish that there were no other attorneys of comparable skill and knowledge willing to take the case at the statutory level. There is no other evidence in the record to suggest otherwise, and so, plaintiffs have met the criterion for enhanced fees. See Ramon-Sepulveda, 863 F.2d at 1463.

Based on the aforementioned "special circumstances," the court finds that an enhanced rate for both attorneys of $325 per hour is a reasonable market-rate for the Sacramento area. See Mendenhall v. NTSB, 213 F.3d 464, 471 n.5 (9th Cir. 2000)(stating that "[u]nder Ninth Circuit case law, . . ., the relevant legal community is the 'forum district'"). The court notes that plaintiffs have failed to provide any specific evidence of local courts awarding fees in excess of $275.00 in comparable cases.[10] Indeed, the court notes that Ms. Duggan previously sought and received an award of $275 per hour from this very court only two years ago in an EAJA case. See Californians For Alternatives to

---

[10] Duggan declares that she received attorney's fees of up to $400.00 through settlements of federal and state cases, but does not provide evidence that a court has ever granted her that much. Dec. of Sharon E. Duggan at 6. Sherlock provides no evidence of any previous hourly rates near $400 granted by a local court. See Dec. of William Sherlock.

14

Toxics v. Dombeck, No. CIV. S-00-0605 LKK/PAN, slip op. at 10 (E.D. Cal. Jan. 30, 2004)(Karlton, J.).

As for the certified law student, the court finds that a rate of $70 pre-graduation and $100 post-graduation is a fair and reasonable rate for a third-year certified law student under the circumstances.

### 2. **Reasonableness of Hours**

The court must next determine if the number of hours billed was reasonable. In arriving at the lodestar figure,[11] the court shall exclude hours that are "excessive, redundant, or otherwise unnecessary . . . ." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

Plaintiffs' attorneys and the certified law student seek a total of 796.55 hours.[12] Defendants argue that 796.55 hours is an unreasonable amount of hours to bill. They specifically argue that there "was not a lot work required in what was in essence a one issue case." Defs.' Opp'n at 9. Defendants, however, identify only two areas where they challenge the hours billed. First, defendants argue that 5.9 hours billed for filing this case in the Northern District of California should be subtracted. In their

---

[11] The lodestar figure is arrived at by multiplying the reasonable hours expended by a reasonable hourly rate. See Hensley, 461 U.S. at 433.

[12] Sherlock seeks a total of 358.6 hours, Duggan seeks a total of 8.45 hours, and Hardy seeks a total of 429.5 hours, including a deduction of 100 hours for work "deemed clerical, organizational, or excessive because of her relatively recent entry to the field." Pls.' Mot. For Att'ys Fees at 17-18.

15

reply brief, plaintiffs concede that subtracting 5.9 hours is appropriate and therefore, the court takes this subtraction into account in arriving at the total costs.

Second, defendants argue that the court should subtract the six hours for "legal research on the FACA claim." Defs.' Opp'n at 9-10. The court cannot agree. The research and record review necessary to make the FACA claim relate directly to plaintiff's larger NEPA claims. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley, 461 U.S. at 440. As the FACA claim was related to the NEPA claim, and plaintiff won substantial relief, the court finds these six hours were reasonably billed.

The court concludes that the hours billed are in fact reasonable given the expansive record and novel issues. The court finds that 790.65 hours is a reasonable number of hours for the lodestar calculation.

3. **Costs**[13]

EAJA authorizes the recovery of "costs" and "fees and expenses." 28 U.S.C. § 2412(a)(1); § 2412(d)(1)(A). Awards of costs that are ordinarily billed to a client are routine under all other fee statutes, and the expenses enumerated in 28 U.S.C. § 2412(d)(2)(A) are set forth as examples, not as an exclusive

---

[13] Defendants do not contest any award of costs and expenses.

16

list.  Int'l Woodworkers, Local 3-98 v. Donovan, 792 F.2d 762, 767 (9th Cir. 1986).

Plaintiffs request a total of $2,503.00 in costs and other expenses, specifically:  filing fees, transcripts, postage, supplies, telephone, and travel expenses.  Pls.' Mot. For Att'ys Fees at 22.  Sherlock is requesting $1,640.93 of that total for filing fees, photocopy expenses, postage, and on-line legal research fees.  Dec. of William H. Sherlock at 5.  Duggan is seeking $156.17 of that total for photocopying expenses, postage, and delivery services.  Dec. of Sharon E. Duggan at 7.

The court notes however, that there is a mathematical error in plaintiffs' costs calculations with respect to Hardy.  Plaintiffs' motion for attorneys fees lists the amount of costs at $2,503.00.  Pls.' Mot. For Att'ys Fees at 22.  However, the amount declared by Hardy in her declaration exceeds the remaining balance of $2,503.00 once Sherlock and Duggan's costs have been subtracted from the total.  In other words, Hardy lists fees in Exhibit A of her declaration, but her fees and expenses total $1,556.40, which is more than double the $705.90 that remains after deducting Sherlock's and Duggan's costs and expenses from the total of $2,503.00.  The court is reluctant to speculate as to the proper amount and therefore adopts the lower of the two amounts, namely the $2,503.00 amount set forth in the motion itself.

Accordingly, the court grants plaintiffs $2,503.00 in costs and expenses.

////

# V.

# ORDER

The court AWARDS attorneys fees and costs in the amount of $150,469.75, as calculated below.

|          | Reasonable Hours | Reasonable Market Rates for Sacramento | Lodestar      | Costs and Expenses |
|----------|------------------|----------------------------------------|---------------|--------------------|
| Sherlock | 352.7            | $325/hr                                | $114,627.50   | $ 1,640.93         |
| Duggan   | 8.45             | $325/hr                                | $ 2,746.25    | $   156.17         |
| Hardy    | 411.9            | $70/hr                                 | $ 28,833.00   | $   705.90         |
|          | 17.6             | $100/hr                                | $ 1,760.00    |                    |
| Costs    |                  |                                        |               |                    |
| **TOTALS** | **790.65**     |                                        | **$147,966.75** | **$ 2,503.00**   |

Hearing on the motion, currently set for July 24, 2006, is VACATED.

IT IS SO ORDERED.

DATED: July 20, 2006.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT